UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGELES L. PARTMAN,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>CAROLYN COLVIN, Acting Commissioner,<br>Social Security Administration,<br><br>　　　　　　Defendant. | Case No. 5:13-cv-03468-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 19, 21)** |

Plaintiff Angeles L. Partman appeals the decision by Carolyn Colvin, Acting Commissioner of Social Security, denying her disability insurance benefits.[1] Partman moves for summary judgment. The Commissioner opposes the motion and cross-moves for summary judgment. The matter was submitted without oral argument pursuant to Civ. L.R. 16-5. Having reviewed the papers, the court DENIES Partman's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

---

[1] The challenged decision was rendered by Administrative Law Judge F. Keith Varni on October 21, 2010. The ALJ's decision became final on May 30, 2013, when the Appeals Council of the Social Security Administration denied Partman's request for administrative review of the decision.

## I. BACKGROUND

The following facts are taken from the decision by the ALJ and the accompanying administrative record. Partman was born November 9, 1960.[2] She neither graduated from high school nor obtained a GED,[3] but she did earn an associate's degree.[4] Previously, Partman worked in restaurant service, quality control, administrative support, office assistance, and administrative assistance.[5] She last worked part-time at a McDonald's restaurant in 2008, however, she stopped working there to take care of her parents, who were ill.[6] Thereafter, Partman collected unemployment insurance payments for approximately six months from 2008 to 2009.[7] Partman lives with her husband and mother.[8]

On February 9, 2009, Partman applied for disability insurance benefits under Title II of the Social Security Act, alleging that she was disabled beginning October 26, 2008.[9] Partman's claim asserted that her ability to work was limited by back injuries, poor vision, poor circulation in her legs, gastroesophageal reflux disease, and depression.[10] The claim was denied initially on April 22, 2009, and again upon reconsideration on November 5, 2009.[11] On December 17, 2009, Partman filed a written request for a hearing on her claim.[12]

---

[2] *See* AR at 40, 105.

[3] *See id.* at 40.

[4] *See id.* at 240.

[5] *See id.* at 41, 146-53.

[6] *See id.* at 41-42, 116.

[7] *See id.* at 56.

[8] *See id.* at 41.

[9] *See id.* at 26, 103-09.

[10] *See id.* at 115.

[11] *See id.* at 26-33.

[12] *See id.* at 74.

2
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.     The ALJ Held a Hearing on Partman's Claim

The ALJ held a hearing on September 17, 2010.[13] Partman appeared at the hearing with counsel.[14] She testified about the medical conditions that allegedly prevent her from working.[15] Her testimony indicated that her back injury is the main reason for her inability to work and that standing, sitting, or laying down for extended periods aggravates her back pain.[16] Partman testified that she is only able to stand without pain for approximately twenty minutes, sit without pain for ten to twenty minutes, and walk for a distance of approximately less than a city-block without pain.[17] Furthermore, Partman stated that she is unable to lift over five pounds.[18] Although Partman has a driver's license, she can only drive when she feels well enough not to take her medication and is only able to drive without pain for approximately twenty minutes.[19] As to her depression, Partman testified that she is not emotionally stable enough to maintain employment and visits a psychologist approximately once per week.[20]

Although none of her physicians testified at the hearing, Partman testified as to treatment of her conditions. She was referred to aqua therapy for her back injury, but only attended one session, which she did not believe improved her condition.[21] She also received an epidural steroid injection

---

[13] *See id.*

[14] *See id.*

[15] *See id.* at 40-57.

[16] *See id.* at 42-44.

[17] *See id.* at 49.

[18] *See id.* at 50.

[19] *See id.* at 52, 54.

[20] *See id.* at 50, 52.

[21] *See id.* at 44-45.

3
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

but reacted poorly to this treatment.[22] Partman uses a cane for assistance after falling from a chair approximately one year before the hearing.[23] To manage her pain, Partman regularly takes Flexeril, Dilaudid, and Diazepam,[24] which are of limited efficacy[25] and tend to make her tired.[26]

The ALJ took all of the medical documents prepared for the claim into evidence, including reports from an arthritis and orthopedic medical clinic, a psychiatric report and review, multiple case analyses and medical evaluations, a comprehensive internal medicine evaluation, case development worksheet, disability worksheet, records from Partman's pain management provider, prescription records, records from Partman's psychiatrist, records from treatment following Partman's epidural, and both mental and physical Residual Functional Capacity ("RFC") reports.[27]

The ALJ took the case under submission but left the record open so that Partman would be able to submit medical records that she had requested before the hearing but not yet received.[28]

**B.  The ALJ Concluded That Partman Had the RFC to Perform Past Relevant Work and Thus Was Not Disabled**

On October 21, 2010, the ALJ issued his decision.[29] Pursuant to 20 C.F.R. § 416.920(a), the ALJ conducted the established five-step evaluation process to determine whether Partman is disabled. In the first step of the analysis, the ALJ found that Partman had not engaged in substantial gainful employment since October 26, 2008.[30] At steps two and three, he found that

---

[22] *See id.* at 45.

[23] *See id*.

[24] *See id.* at 46.

[25] *See id.* at 47-48.

[26] *See id.* at 43, 51.

[27] *See id.* at 39, 186-335.

[28] *See id.* at 57-58.

[29] *See id.* at 33.

[30] See *id.* at 28.

4
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Partman has the severe impairment of chronic low back pain with mild degenerative changes in the lumbar spine, but that this did not meet or medically equal any of the official impairments listed in 20 C.F.R. § 404 app. 1.[31]   At step four, he found that Partman had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that she should avoid exposure to extreme cold and vibrations.[32]   At step five, based on the claimant's testimony, adult function reports, medical records, and RFC reports, the ALJ found that Partman could perform her past relevant work as a restaurant hostess.[33]   Accordingly, the ALJ concluded that Partman was not disabled and thus did not qualify for disability insurance benefits.[34]

### C.     The Appeals Council Denied Partman's Request for Review

Partman requested review of the ALJ decision by the Commissioner's Appeals Council.[35]   The CAC denied this request thereby making the ALJ decision final.[36]

## II.     LEGAL STANDARDS

### A.     Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Partman's benefits.  The Commissioner's decision (here, the underlying decision of the ALJ) will be disturbed only if it is based upon improper legal standards or not supported by substantial evidence.[37]   In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as

---

[31] *See id.*

[32] *See id.* at 28-29.

[33] *See id.* at 29-32.

[34] *See id.* at 33.

[35] *See id.* at 19-20.

[36] *See id.* at 1-7.

[37] *See Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

5
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

adequate to support the conclusion."[38]  When determining whether substantial evidence exists to support the decision, the court must consider adverse as well as supportive evidence.[39]  Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision.[40]  "If additional proceedings can remedy defects in the original administrative proceedings, a . . . case should be remanded."[41]

**B.     Standard for Determining Disability**

Disability claims are evaluated using a five-step, sequential evaluation process.[42]  In the first step, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[43]  Substantial gainful work activity is the ability to sustain work activity "8 hours a day, for 5 days a week, or an equivalent work schedule."[44]  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[45]  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the listing of impairments;[46] if so, disability is conclusively presumed and

---

[38] *Moncada*, 60 F.3d at 523 (*citing Magallenes v. Bowen*, 881 F.2d. 747, 750 (9th Cir. 1989)).

[39] *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *Drouin*, 966 F.2d at 1257 (*citing Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)).

[40] *See Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

[41] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[42] *See* 20 C.F.R .§ 404.1520 (2012).

[43] *See* § 404.1520(i).

[44] SSR 96-8p; *see also Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998).

[45] *See* § 404.1520(ii).

[46] *See* 20 C.F.R. § 404, app. 1.

6
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

benefits are awarded.[47]  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity"[48] to perform his or her past work; if so, the claimant is not disabled and the ALJ denies the claim.[49]  The claimant has the burden of establishing a prima facie case of disability by proving that he or she is unable to perform past relevant work; if the claimant meets this burden, the burden shifts to the Commissioner to prove that the claimant can perform other substantial gainful work.[50]  The determination of this issue comprises the fifth and final step in the sequential analysis.[51]

### III.  DISCUSSION

Partman argues that the ALJ erred in his ultimate finding that Partman is not "disabled" as defined by the Social Security Act, 42 U.S.C. § 401 *et seq.*, because he did not provide legally sufficient reasons for discrediting her testimony.[52]  The Commissioner responds that (a) Partman did not preserve the issue for judicial review and (b) the ALJ supported his credibility determination as to Partman's testimony with substantial evidence.[53]

### A.   Partman Preserved the Issue of the ALJ's Credibility Determination for Review

The Commissioner contends that Partman did not properly present the issue of the ALJ's credibility determination for judicial review because she did not adequately link legal authority to

---

[47] *See* § 404.1520(iii).

[48] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *See Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[49] *See* § 404.1520(iv).

[50] *See Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).  There are two ways for the Commissioner to meet the burden of showing that claimant can perform work available in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[51] *See* § 404.1520(v).

[52] *See* Docket No. 19 at 4-15.

[53] *See* Docket No. 21 at 2-10.

7
Case No. 5:13-cv-03468-PSG
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

facts in the record and she did not sufficiently explain the ALJ's alleged error.[54] Although an appellant in a social security case need not raise an issue in the administrative proceeding to preserve it for appeal, the court can only review specific and distinct arguments presented in the appellant's opening brief.[55] Partman's brief describes with the requisite specificity her argument that the ALJ erred in discrediting her testimony because the ALJ's reasons for doing so—such as lack of objective support in the record and her ability to perform daily activities—are not clear and convincing.[56] Thus, regardless of how sound Partman's argument is, she has properly presented it to this court for review.

## B.   Substantial Evidence Supports the ALJ's Credibility Determination

The ALJ follows a two-step analysis in evaluating a claimant's symptoms.[57] In the first step, the ALJ determines whether the claimant's alleged symptoms could be reasonably inferred from objective medical evidence of the claimant's impairments.[58] If so, the ALJ moves to the second step, where the ALJ considers evidence in addition to the claimant's testimony to determine the intensity and persistence of the claimant's symptoms.[59] If at the second step the ALJ finds that the additional evidence contradicts the claimant's symptom testimony, he may discredit that testimony, but must provide clear and convincing reasons for his determination by identifying evidence in the record such as the claimant's daily activities and medical treatment and specifying how that evidence contradicts the claimant's testimony.[60] If the ALJ provides such clear and

---

[54] *See id.* at 2-3.

[55] *See Sims v. Apfel*, 530 U.S. 103, 107-08 (2000) (Breyer, J., dissenting); *Independent Towers of Washington v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003).

[56] *Id.*

[57] *See* 20 C.F.R .§ 404.1529 (2011).

[58] *Smolen v. Chater*, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) (*citing* § 404.1529(a-b)).

[59] *Id.* (*citing* 20 C.F.R. § 404.1529(c) (2011)).

[60] *See* SSR 96-7p *available at* http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html/; *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that substantial

convincing reasons for discrediting the claimant's testimony, substantial evidence supports that determination and the court "may not engage in second-guessing."[61]

Here, the ALJ identified substantial evidence supporting his credibility determination. Although the ALJ found that Partman's symptoms could reasonably be inferred from her mild degenerative and mild facet arthropathy, he also found that additional evidence contradicted her testimony as to the intensity and persistence of her symptoms.[62] This finding of contradictory evidence thus was not a mere incantation of a lack of objective evidence of the type cautioned against by the Ninth Circuit.[63] Specifically, Partman provided in her Adult Function Report that she is able to perform various daily activities including caring for herself, cooking, cleaning, walking, and driving.[64] These activities indicate that Partman is able to engage in physical, mental, and social activities that require a functional capacity beyond the limitations that she testified to. Moreover, the ALJ partially discredited Partman's symptom testimony due to her failure to maintain consistent treatment. After being referred to aqua therapy, Partman only attended one therapy session, and after finding that epidural injections and prescription medication were ineffective forms of pain relief, she failed to seek further remedies.[65] In addition, the ALJ noted that Partman cared for her parents full-time and applied for unemployment benefits—which

---

evidence supported the ALJ's discrediting claimant's symptom testimony where her daily activities included caring for personal needs, cooking, cleaning, and shopping) (*citing* SSR 88-13; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *Smolen*, 80 F.3d 1273 at 1281 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

[61] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (*citing Morgan v. Commissioner of Social Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999)).

[62] *See* AR at 30.

[63] *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

[64] *See id.* at 130-36.

[65] *See id.* at 29.

requires that an applicant be able, willing, and available to engage in work activity—after her period of alleged disability began.[66]

As for Partman's depression, the ALJ found that Partman did not have a severe mental impairment based on objective medical evidence in the record; he was therefore not required to proceed to the second step of the analysis to make a credibility determination regarding the severity of Partman's symptoms.[67] Partman's RFC reports indicated that her mental status was "generally normal."[68] Furthermore, although Partman's psychological evaluation provided a Global Assessment of Functioning score indicating mild symptoms of mental, social, or occupational functioning, the ALJ explained that he gave these scores less weight in his assessment given their subjectivity as opposed to the objective details provided by Partman's psychiatric physician reports which indicated that Partman is generally functional and able to work regularly.[69] In sum, the ALJ applied the established two-step analysis to Partman's symptoms properly, providing clear and convincing reasons for his conclusions. The court therefore is not in a position to second-guess his determination as to Partman's credibility.

## IV. CONCLUSION

Partman's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED. The Clerk shall close the file.

---

[66] *See id.* at 29 n.1.

[67] *See id.* at 31-32; *cf. Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that ALJ properly relied on objective medical evidence to discredit claimant's testimony as to the severity of her anxiety); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (upholding finding that subjective symptom testimony related to bursitis was not credible given contradictory objective evidence); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding finding that subjective symptom testimony related to back injury was not credible given contradictory objective medical evidence); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (holding that substantial evidence supported decision to discredit subjective symptom testimony related to claimant's cervical degenerative disease).

[68] *Id.* at 32.

[69] *See id.*

**IT IS SO ORDERED.**

Dated: June  30 , 2014

_____
PAUL S. GREWAL
United States Magistrate Judge